Benjamin D. LUCAS, Appellant,

v.

Delores M. NESBITT, Appellee.

No. 1754.

Court of Appeals of Texas,
Corpus Christi.

April 28, 1983.
Rehearing Denied June 16, 1983.

Benjamin D. Lucas, San Antonio, William G. Burnett, Sinton, for appellant.

Francis I. Gandy, Jr., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GON-ZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is a legal malpractice case. Delores M. Nesbitt, appellee, sued attorney Benjamin D. Lucas, appellant, for damages for negligence and violations of the Texas De-

ceptive Trade Practices Act.[1] Appellee alleged that these acts occurred during the course of her 1978 divorce when appellant represented her as her attorney. After the jury answered certain special issues generally favorable to the appellee, the trial court entered judgment in the total amount of $332,000.00 for appellee.

The trial court submitted the case to the jury on 35 special issues. The first twelve special issues submitted concerned acts or omissions of malpractice constituting negligence and proximate cause of financial injury to the appellee. These were all answered favorably to the appellee. Next, the jury answered special issues concerning acts and omissions that were false, misleading or deceptive acts or practices which the jury also found favorably to the appellee. In addition, the jury found that each was a producing cause of adverse effects on appellee which the court instructed the jury to mean "to sustain economic harm or damage" to appellee.

The jury was then asked to answer certain special issues concerning negligence of the appellee. In at least one of the issues, the jury found no negligence or proximate cause. In another issue concerning appellee's separate property, the jury found that she was negligent and that her negligence was a proximate cause of damages sustained by her. The jury then found that the percentage of negligence attributable to each of the parties was 80% appellant and 20% appellee. Special issue 31 inquired about the financial loss sustained by appellee "resulting from the acts of Benjamin D. Lucas while representing her in cause number 78–113–B and from relying upon his advice during the time he represented her. Answer in dollars and cents. Answer: $83,-000.00."

In special issue 32, the jury found that the difference between the value of appellant's services for representing her and the amount charged was $2,000.00.

In special issues 33, 34 and 35, the jury found that the appellant should pay the appellee $10,000.00 in exemplary damages.

Based on the jury answers concerning the negligence of the appellant, the trial court found that plaintiff was entitled to recover the sum of $83,000.00. The trial court further found that the plaintiff was entitled to recover from the defendant-appellant, (based on the answers of the jury relating to the deceptive trade practice) the sum of $249,000.00 by tripling the $83,000.00 award. The trial court refused to award any monies relating to the exemplary damages found by the jury, nor did the court consider in any way the $2,000.00 difference the jury found between the value of appellant's services and the amount charged by appellant. The total judgment awarded to the plaintiff against the appellant was $332,000.00. This amount was four times the amount found by the jury as being the amount that would reasonably compensate appellee for her financial loss resulting from the acts of appellant while representing her.

Appellee contends that she is entitled to the full $332,000.00; first to the $83,000.00, based on the negligence of the appellant; and then, to three times this amount (i.e., $249,000.00) under the Deceptive Trade Practices and Consumer Protection Act. This, according to appellee, is because the remedies under the DTPA and CPA are in addition to other procedures or remedies provided for in any other laws.

 At the outset, the appellant challenges the legal and factual sufficiency of the evidence to support four of the jury findings:

1) that the failure to file pleadings alleging the existence of the appellee's separate real property was a proximate cause of injury to the appellee;

2) that the false, misleading or deceptive act of representing that the appeal instruments were on file when they were not was a producing cause of adverse effects on appellee;

3) that testifying that the value of his services to the appellee was $7,840.00 and then billing her for nearly $35,000.00 was

---

1. The applicable version is as amended in 1977. 1977 Tex.Gen.Laws, ch. 216, at 600–05. See also Tex.Bus. & Com.Code Ann. § 17.41.50B (Vernon Supp.1982).

an unconscionable action or course of action; and

4) that the unconscionable action or course of action referred to in 3) above was a producing cause of adverse effects on the appellee.

In determining whether the evidence is "legally" sufficient, we are required to consider only the evidence tending to support the jury's findings and reasonable inferences therefrom, disregarding all evidence and inferences contrary thereto. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In reviewing the evidence for "factual" sufficiency, we look at all the evidence to decide whether the supporting evidence is so weak or the contrary evidence so overwhelming that the findings should be set aside and a new trial ordered. *Garza v. Alviar,* supra at 823. In this case, we have reviewed the entire record, and find that there was ample evidence to support the jury's findings that appellant's failure to file proper pleadings in the trial court and his misrepresentation concerning the filing of the appeal were causes of financial damage to the appellee. These points of error are overruled.

■ However, we find that there was no evidence to support the jury's finding that the appellant's conduct in billing the appellee for approximately four times the amount which he had testified to under oath at the divorce trial as the value of his services constituted an unconscionable action or course of action, or that such conduct was a cause of adverse effects on the appellee. At all times involved in this suit, the DTPA defined unconscionable action or course of action as:

"An act or practice which, to a person's detriment:

A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

B) results in a gross disparity between the value received and the consideration paid in a transaction involving transfer of consideration."

1977 Tex.Gen.Laws, Ch. 216, § 1, at 600. There is no evidence in the record to show that the appellant took advantage of the appellee. Likewise, there is no evidence of any consideration actually paid by appellee to appellant in gross disparity to the value received. In short, there is no evidence that this reprehensible conduct on the part of appellant was in any way to the appellee's actual detriment, economic harm or damage.

■ Even so, these points do not present reversible error. Along with the general damage issue, there was a limiting instruction which forbade the jury to take into consideration any amount for attorney's fees which the jury may have found to have been charged by Mr. Lucas. In addition, there was a special issue, not objected to on this appeal, which asked the jury the difference between the value of the appellant's services for representing the appellee and the amount charged by appellant. The jury's answer to that issue was $2,000.00. This amount was not considered by the trial court in entering its judgment. For all of these reasons, the jury's answers to the issues designed to determine if appellant was guilty of an unconscionable course of action concerning the attorney's fees had no effect on the judgment. Therefore, any error in the jury's findings concerning an unconscionable action or course of action in violation of the DTPA was harmless. Rule 434, Tex.R.Civ.P.

■ Appellant argues that damages under the DTPA are improper in this case because appellee was not a consumer as to appellant within the meaning of the act. Appellant's only argument in support of this point is that the DTPA does not apply to the services of an attorney. This issue has been considered by the appellate courts and decided adversely to the appellant. See *DeBakey v. Staggs,* 605 S.W.2d 631 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e., 612 S.W.2d 924); *Barnard v. Mecom,* 650 S.W.2d 123 (Tex.Civ.App.— 1983). This point of error is overruled.

■ Next, the appellant claims the damages awarded by the trial court's judgment are excessive. With this we must agree. Special issue number thirty-one asked the jury the following question:

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence would reasonably compensate Delores M. Nesbitt for the financial loss, if any, sustained by Delores M. Nesbitt resulting *from the acts of Benjamin D. Lucas* while representing her in cause number 78–113–B, and from relying upon his advice during the time he represented her?" (Emphasis supplied.)

In answering such issue, the jury was allowed to consider the evidence of six separate charges of negligence and at least one of two of the allegations that constituted a violation of the DTPA. The jury was not asked to consider the damages resulting from "any one of the negligent acts of appellant" nor was the jury asked to find the damages from "either or both of the alleged violations of the DTPA." Therefore, the jury's finding of $83,000.00 "*resulting from the acts of*" appellant included the damages for all of the causes of action. We have no way of separating the damages for actions of negligence and those concerning the violations of the DTPA. The judgment does not comport with the jury's verdict on the damages. To correctly award $83,000.00 as compensation for appellant's negligence, the trial court would have had to assume that the jury attributed no damages to the DTPA violation. This the trial court did not do. To correctly award three times $83,000.00 under the DTPA, the court would have had to assume a zero finding on damages for negligence. This the trial court could not have done. Instead, the trial court apparently used the entire amount ($83,000.00) to figure first the damages for the negligence cause of action and then tripled that amount (3 × $83,000.00 = $249,000.00), and added it to the jury's award of $83,000.00, for a total of $332,-000.00. The result is obviously excessive.

■ The appellee contends that the appellant has waived his right to complain of the damages issue by his failure to offer a sufficient objection to the submission of the damage issue at the time of trial. See Rule 274, Tex.R.Civ.P.; *Monsanto Co. v. Milam,* 494 S.W.2d 534 (Tex.1973). This argument is not persuasive in this instance. Appellant cannot be held accountable for appel-lee's failure to secure separate jury findings on damages upon which an accurate judgment could be based. *Woods v. Littleton,* 554 S.W.2d 662, 671–72 (Tex.1977).

At the time of this lawsuit, damages for DTPA violations were subject to mandatory trebling. *Woods v. Littleton,* supra. It is impossible for us to determine what portion of the damages assessed by the jury is attributable to the DTPA violation. Therefore, we must reverse the judgment. Because the liability issues were contested, we must remand the entire cause for a new trial. Rule 434, T.R.C.P.; *Waples-Platter Co. v. Commercial Standard Ins. Co.,* 156 Tex. 234, 294 S.W.2d 375 (Tex.1956); *Jordan Ford, Inc. v. Alsbury,* 625 S.W.2d 1 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

Consideration of the remainder of appellant's points or appellee's cross-point is unnecessary. The judgment of the trial court is reversed, and the case is remanded for new trial.